8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 MICHAEL J. HICKS,                                      No.  2: 16-cv-2465 TLN KJN P

12                 Plaintiff,

13         v.                                             FINDINGS AND RECOMMENDATIONS

14 AFSHIN ARYA et al.,

15                 Defendants.

16

17 I.  Introduction

18         Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19 to 42 U.S.C. § 1983.  Pending before the court is defendant Arya's motion for summary judgment

20 (ECF No. 46) and plaintiff's motion to file a second amended complaint (ECF No. 47).  For the

21 reasons stated herein, the undersigned recommends that both motions be granted in part and

22 denied in part.

23 II.  Background

24         A.  Original Complaint

25         Pursuant to the mailbox rule, on October 11, 2016, plaintiff filed the original complaint

26 naming only Dr. Arya as a defendant.[1]  (ECF No. 1.)  Plaintiff alleged that defendant Arya failed

27 _____

28 [1]   The original complaint does not contain a proof of service.  For purposes of the pending
motions, pursuant to the mailbox rule, the undersigned presumes plaintiff mailed his complaint on

1

1    to provide him with adequate medical treatment for cervical spondylosis and hepatitis C.

2         Plaintiff alleged that on September 16, 2014, Ron Brown, a contract physical therapist at

3    California State Prison-Sacramento ("CSP-Sac"), recommended that plaintiff be transferred to

4    another prison in order to receive cervical traction three times a week due to Brown's limited

5    scheduling availability.  (Id. at 6.)

6         In December 2014, plaintiff was transferred to the California Medical Facility ("CMF").

7    (Id.)  Plaintiff was housed at CMF from December 2014 through January 2016, where he received

8    cervical traction and heat pad therapy twice a week "with marked improvement in pain relief, grip

9    strength in his left hand and increased range of motion in his neck and shoulder."  (Id. at 6-7.)

10   In January 2016, plaintiff's cervical traction was discontinued when he was transferred to two

11   different prisons.  (Id. at 7.)  In February 2016, plaintiff was evaluated by an outside sports/pain

12   physician who recommended cervical traction, electrodiagnostic nerve testing, trigger point

13   injections and an increase in gabapentin.  (Id.)

14        In June 2016, plaintiff was evaluated by an outside neurosurgeon who recommended

15   continued cervical traction over surgery.  (Id.)

16        In June 2016, an electromyogram and nerve conduction study revealed paraspinal muscle

17   nerve root damage.  (Id.)  In June 2016, an ultrasound of plaintiff's liver revealed that he had

18   Stage III liver disease.  Plaintiff alleged that he was not informed of the results of the ultrasound

19   until September 2016.  (Id.)

20        On September 27, 2016, defendant Dr. Arya saw plaintiff for a chronic care appointment.

21   (Id. at 8.)  At that time, plaintiff was housed at California State Prison-Sacramento ("CSP-Sac").

22   Plaintiff told defendant Arya about his cervical spondylosis history.  (Id.)  Plaintiff told defendant

23   Arya that the pain medication he took was ineffective and that he suffered from pain, and loss of

24   sleep and grip strength.  (Id.)  Defendant Arya told plaintiff that he would prescribe Celebrex, an

25   NSAID.  (Id.)  Plaintiff told defendant Arya that he had taken Celebrex in the past, but it was

26   ineffective, and that plaintiff had hepatitis C.  (Id.)  Defendant Arya prescribed Celebrex anyway

27

28   the date it was signed, i.e., October 11, 2016.

and ordered physical therapy.  (Id.)

Plaintiff told defendant Arya that physical therapy at that prison was for acute care only, and that the physical therapist would recommend his transfer to another prison capable of providing more scheduled, routine cervical traction.  (Id.)  Plaintiff asked to be medically transferred to an institution capable of providing traction two or three times per week.  (Id. at 9.) Defendant Arya told plaintiff that due to his custodial housing in the psychiatric services unit ("PSU"), a medical transfer was not available.  (Id.)  Plaintiff told defendant Arya that he was allowing custody to intentionally interfere with his medical treatment for reasons unrelated to his medical needs.  (Id.)

Defendant Arya told plaintiff that he had Stage III liver disease.  (Id.)  Defendant Arya told plaintiff that his condition was serious, but he refused to order hepatitis drug treatment.  (Id.)

B.  First Amended Complaint

Pursuant to the mailbox rule, plaintiff filed his first amended complaint on June 12, 2017. (ECF No. 26.)  The amended complaint named as defendants Dr. Arya, CSP-Sac Chief Executive Officer Felder, and California Correctional Health Care Facilities Deputy Director Lewis.  (Id. at 5.)

The first amended complaint included the same allegations against defendant Arya as were made in the original complaint. (See id. at 11-15.)  Plaintiff additionally claimed that he told defendant Arya that CSP-Sac lacked the equipment necessary for cervical traction.  (Id. at 14.)

With respect to defendants Felder and Lewis, plaintiff alleged that these defendants improperly denied his grievances seeking treatment for hepatitis C.  Plaintiff alleged that on December 9, 2016, defendant Felder denied his grievance.  (Id. at 16-17.)  Plaintiff alleged that on March 17, 2017, defendant Lewis denied his grievance.  (Id. at 17-18.)

Plaintiff alleged that his hepatitis C treatment finally began on May 22, 2017, approximately 11 months after he was found to have Stage III liver disease.  (Id. at 26.)

C.  Prior Court Orders Addressing Motion to Amend

Defendant Arya opposed plaintiff's motion to file the first amended complaint on the grounds that plaintiff failed to administratively exhaust the claims against defendant Arya made

3

in the original complaint.  (ECF No. 30).  Thus, defendant argued that the motion to amend was futile.  (Id.)

On August 23, 2017, the undersigned recommended that plaintiff's motion to amend be granted.  (ECF No. 38.)  The undersigned rejected defendant's argument that amendment was futile because of non-exhaustion.  (Id. at 6.)  The undersigned found that the issue of exhaustion of administrative remedies is not appropriately raised, or considered, by the court in an opposition to a motion to amend.  See Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc) (dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure).  (Id.)  The undersigned also found that it was not clear that plaintiff had failed to exhaust his administrative remedies with respect to his claims against defendant Arya.  (Id.)

On December 12, 2017, the Honorable Morrison C. England adopted the August 23, 2017 findings and recommendations.  (ECF No. 54.)

D.  Motion for Summary Judgment

On September 29, 2017, defendant Arya filed the pending summary judgment motion.  (ECF No. 46.)  Defendant moves for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies and as to the merits of plaintiff's claims.  (Id.)

E.  Motion for Leave to File Second Amended Complaint

Pursuant to the mailbox rule, plaintiff filed his proposed second amended complaint and motion for leave to amend on October 2, 2017.  (ECF No. 47.)  The proposed second amended complaint names as defendants Dr. Arya, Chief Executive Officer Felder, and Deputy Director Lewis.  Also named as defendants in the proposed second amended complaint are D. Hopkins, R. Rudas, P. Sahota, R. Gil, D. Bodenheimer, M. Felder, D. Knipp, J. Yang and C. Carmichael.

The second amended complaint contains two claims.  Claim one alleges that defendants provided inadequate medical treatment for cervical spondylosis by failing to provide adequate pain medication and for denying plaintiff's request to be transferred to CMF for cervical traction.  Claim two alleges that defendants provided inadequate medical treatment for hepatitis C.

////

1   The second amended complaint includes the same claims made against defendant Arya as

2   in the original and first amended complaints, i.e., the claims arising out of defendant Arya's

3   September 27, 2016 examination of plaintiff.  The claims against the other defendants arise from

4   incidents allegedly occurring after September 27, 2016.

5   III.  Discussion

6       Defendant Arya opposes the pending motion to amend on the same grounds that he

7   opposed the first motion to amend:  amendment is futile, because plaintiff failed to exhaust

8   administrative remedies as to his claims against defendant Arya.  (ECF No. 51.)  As discussed

9   above, the undersigned rejected this argument in the findings and recommendations addressing

10  plaintiff's first motion to amend because the issue of administrative exhaustion was not

11  appropriately raised, or considered, by the court in an opposition to a motion to amend.  See

12  Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc) (dismissal of a prisoner civil rights

13  action for failure to exhaust administrative remedies must generally be decided pursuant to a

14  motion for summary judgment under Rule 56, Federal Rules of Civil Procedure).

15      Because defendant has now raised the issue of administrative exhaustion in the pending

16  summary judgment motion, the undersigned can reach the issue of futility as it relates to the

17  pending motion for leave to file a second amended complaint.

18      Accordingly, the undersigned herein first addresses the portion of defendant's summary

19  judgment motion addressing administrative exhaustion.

20      A.  Motion for Summary Judgment re:  Exhaustion of Administrative Remedies

21      *Legal Standard for Summary Judgment*

22      Summary judgment is appropriate when it is demonstrated that the standard set forth in

23  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

24  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

25  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

26          Under summary judgment practice, the moving party always bears
            the initial responsibility of informing the district court of the basis
27          for its motion, and identifying those portions of "the pleadings,
            depositions, answers to interrogatories, and admissions on file,
28          together with the affidavits, if any," which it believes demonstrate

the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

6

1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on January 12, 2017 (ECF No. 10), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

*Legal Standards for Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983..., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90–93.  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison [or jail] grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  On January 28, 2011, California prison regulations governing inmate grievances were revised.  Cal. Code Regs. tit. 15, § 3084.7.  Now inmates in California proceed through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the CDCR. Cal. Code Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services.

////

8

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b). Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock, 549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),] should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (hereafter "Albino"). A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. See Albino, 747 F.3d at 1172; Draper v. Rosario, 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process). The ultimate burden of proof, however, remains with the defendant. Id.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172–73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable");

1    Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (prisoner not required to proceed to third

2    level where appeal granted at second level and no further relief was available).

3         *Analysis*

4         Defendant Arya argues that plaintiff failed to exhaust his administrative remedies prior to

5    filing this action on October 11, 2016.  See Jones v. Bock, 549 U.S. 199, 211 (2007) (prior to

6    filing suit, inmates are required to exhaust the available administrative remedy process).  In

7    support of this argument, defendant cites the declaration of J. Lewis, employed by California

8    Correctional Health Care Services ("CCHCS") as the Deputy Director of Policy and Risk

9    Management Services ("PRMS").  (ECF No. 46 at 33.)  J. Lewis states that at the request of the

10   Attorney General's Office, a review of the inmate health care appeal records in the "HCARTS"

11   database was conducted for plaintiff, for any health care appeals regarding complaints related to

12   Hepatitis C that were submitted by plaintiff between October 14, 2012, through October 16, 2016.

13   (Id. at 35.)  The review revealed that plaintiff had not filed any staff complaints against defendant

14   Arya.  (Id.)

15        The review also revealed two health care appeals regarding complaints related to Hepatitis

16   C.  (Id.)  The first appeal, PBSP HC 120227223, was received November 27, 2012.  (Id.)  The

17   health care appeal was canceled for lack of cooperation.  (Id.)  The second health care appeal,

18   SAC HC 16033189 (processed as SAC SC 16001813), was exhausted at the Third Level on

19   March 17, 2017.  (Id.)  J. Lewis goes on to state that on June 20, 2017, plaintiff exhausted

20   administrative health care appeal SAC HC 16033680 at the third level regarding the request for

21   cervical traction therapy.  (Id. at 36.)

22        Defendant's evidence demonstrates that plaintiff failed to exhaust his administrative

23   remedies, regarding his claim that defendant Arya failed to treat his hepatitis C, prior to filing this

24   action.  In his opposition, plaintiff offers no evidence demonstrating that he properly exhausted

25   this claim.  Accordingly, defendant Arya's motion for summary judgment on the grounds that

26   plaintiff did not administratively exhaust his claims regarding hepatitis C prior to filing this action

27   should be granted.

28   ////

In his declaration, J. Lewis does not state that he searched the HCARTS database for grievances filed by plaintiff related his to his claims alleging inadequate pain medication and his request for cervical traction. Instead, J. Lewis states that plaintiff exhausted a grievance regarding cervical traction on June 20, 2017. A copy of the third level decision denying grievance no. SAC HC 160336800, attached to defendant's summary judgment motion, indicates that it was denied on July 11, 2017. (Id. at 57.) This decision states that plaintiff's appeal contained the following requests: 1) to be given opiate pain medication; 2) to be considered for laser surgery to the neck and lower back; 3) to be referred to a pain specialist; 4) to be considered for trigger point injections; and 5) to be transferred to CMF for prolonged cervical traction/heat paid treatment. (Id.)

As discussed in the August 23, 2017 findings and recommendations, plaintiff presented evidence that he exhausted another grievance related to his claims for adequate pain medication and cervical traction. Defendant's summary judgment motion does not address this grievance. The undersigned discusses this grievance herein.

On March 3, 2016, while housed at Mule Creek State Prison ("MCSP"), plaintiff filed a grievance requesting that the recommendations of Dr. Silas, pain specialist, be adopted by CDCR, i.e. grievance no. MCSP HC 16048219. (ECF No. 33 at 10-12.) Plaintiff also requested that he be transferred to CMF for cervical traction and heat therapy. (Id.) Plaintiff stated that Dr. Silas had recommended an increase in his gabapentin and trigger point injections, and a follow-up with a neurosurgeon. (Id. at 12.)

On June 12, 2016, while still housed at MCSP, plaintiff submitted the grievance to the third level of review. (Id. at 13.) On September 29, 2016, plaintiff's third level grievance was denied. (Id. at 29.) The Director's Level decision stated that plaintiff's grievance contained the following requests: 1) the recommendations of Dr. Silas, pain specialist, be adopted by CDCR in full; 2) to be medically transferred to CMF for cervical traction and heat therapy; 3) to be seen by a neurosurgeon in person or via telemedicine; and 4) the first level of review be bypassed for immediate review by the Chief Executive Officer. (Id. at 29.)

////

The Director's Level decision stated that plaintiff's medical records indicated the following:

> On July 5, 2016, you were transferred to California State Prison, Sacramento (SAC).
>
> Since your arrival to SAC, documentation indicates you have received nursing assessments and Primary Care Provider (PCP) follow up evaluation and treatment to September 27, 2016, for your history of neck and lower back pain, including neurosurgery consultation and electromyogram (EMG) and nerve conduction study (NCS) with findings of left C6-C7 paraspinal muscle nerve root mild irritation and degenerative disk disease (DDD). The PCP reviewed the neurosurgeon's recommendations with you, noting no surgical intervention indicated at this time and to follow up as needed. The PCP noted a plan of care including continuing current medications, adding trial of the non-formulary medication celecoxib (Celebrex), referral for physical therapy, and PCP follow up in near future. The PCP additionally noted you were provided self-exercises.

(Id.)

Regarding cervical traction, the decision stated, "

> There is no documentation to support the [sic] PCP determined you meet the CCHCS UM criteria for further diagnostics or to be referred back to a neurosurgeon, or that cervical traction or heat therapy is clinically indicated at this time…"

(Id. at 30.)

Regarding pain medication, the decision stated,

> The order for celecoxib is currently pending non-formulary approval, per the Inmate Medical Services Policies and Procedures (IMSP&P), Volume 9, Chapter 8.
>
> ****
>
> Your pain medication regimen has been reviewed and adjusted on multiple occasions indicative of ongoing assessment of your pain complaints. Your current pharmacy profile indicates active orders for the medication acetaminophen and gabapentin for pain management.

(Id. at 29-30.)

The September 29, 2016 director's level decision, quoted above, clearly reviewed defendant Arya's notes from his September 27, 2016 exam of plaintiff. In denying the grievance, the decision stated that defendant Arya did not find that plaintiff required cervical traction. This

12

decision addressed plaintiff's claim requesting a transfer in order to receive cervical traction.

As stated in the August 23, 2017 findings and recommendations, prisoners are not required to file and exhaust separate grievances each time they allegedly receive inadequate medical care for an ongoing condition. See Lewis v. Naku, 2007 WL 3046013 at *5 (E.D. Cal. 2007). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay the groundwork for litigation. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); accord Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010). Because the September 29, 2016 third level decision addressed plaintiff's request for a transfer to CMF in order to receive cervical traction, and defendant Arya's September 27, 2016 finding that plaintiff did not qualify for cervical traction, plaintiff exhausted his administrative remedies as to this claim prior to filing his complaint. The fact that plaintiff later filed another grievance requesting a transfer to CMF for cervical traction does not undermine this finding. Accordingly, defendant Arya should be denied summary judgment as to this claim.

In the original complaint, plaintiff also alleged that defendant Arya prescribed Celebrex after plaintiff told him that it was ineffective to treat his pain. The September 29, 2016 decision generally addresses plaintiff's complaints regarding pain medication, and notes that defendant Arya prescribed Celebrex on September 27, 2016. However, this decision does not address plaintiff's specific claim that Celebrex was ineffective, and that he brought this fact to defendant Arya's attention. Plaintiff's claim that defendant Arya wrongly prescribed Celebrex did not involve an ongoing claim regarding inadequate pain medication. Instead, this claim was specific to defendant Arya.

Accordingly, the undersigned finds that the September 29, 2016 director's level decision did not exhaust plaintiff's claim that defendant Arya wrongly prescribed Celebrex. The record contains no other evidence that plaintiff exhausted this claim prior to filing this action. Accordingly, defendant Arya's motion for summary judgment on the grounds that plaintiff failed to exhaust this claim prior to filing this action should be granted.

Having addressed the issue of administrative exhaustion, the undersigned now considers the pending motion to amend (rather than addressing defendant Arya's motion for summary

judgment as to the merits of plaintiff's claims).

B. <u>Motion to Amend</u>

1. <u>Legal Standard for Motion to Amend</u>

"Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint." <u>Desertrain v. City of Los Angeles</u>, 754 F.3d 1147, 1154 (9th Cir. 2014) (quoting <u>Johnson v. Buckley</u>, 356 F.3d 1067, 1077 (9th Cir. 2004)). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." <u>Id.</u>

2. <u>Discussion</u>

Defendant argues that plaintiff's motion to file a second amended complaint should be denied on the grounds that amendment is futile because the claims raised against defendant Arya in the original complaint are not properly exhausted.

A plaintiff may add newly exhausted claims in an amended complaint, only if the claims asserted in the original complaint were administratively exhausted when the action was commenced. <u>See</u> <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) ("a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation"); <u>see also</u> <u>Rhodes v. Robinson</u>, 621 F.3d 1002, 1006-07 (9th Cir. 2010) (a plaintiff may, in an amended or supplemental pleading, adding newly exhausted claims based on related conduct that occurred after the filing of the original complaint.).[2]

a. <u>Claims Regarding Denial of Request for Transfer for Cervical Traction</u>

As discussed above, plaintiff properly administratively exhausted his claim against defendant Arya alleging denial of his request for a transfer to CMF in order to receive cervical

_____

[2]  Defendant does not argue that the newly raised claims are not exhausted.

traction.  Thus, plaintiff's motion to raise the same, potentially colorable, claims against defendants Bodenheimer (ECF No. 47-1 at 10), Hopkins (id. at 11-12) and Felder (id. at 14-15), is not futile.

b.  Claims Regarding Hepatitis C

As discussed above, plaintiff did not administratively exhaust his claims against defendant Arya regarding hepatitis C prior to filing this action.  Thus, the claims raised in the proposed second amended complaint alleging that defendants provided inadequate medical care for hepatitis C may not be raised.  See McKinney v. Carey, supra.  The claims regarding hepatitis C are not related to the administratively exhausted claims regarding the denial of plaintiff's request for a transfer to CMF in order to receive cervical traction.  See Rhodes v. Robinson, supra. Accordingly, the motion to file a second amended complaint raising new claims alleging inadequate medical care regarding hepatitis C should be denied.

c.  Claims Regarding Denial of Adequate Pain Medication

As discussed above, plaintiff failed to administratively exhaust his claim that defendant Arya wrongly prescribed Celebrex on September 26, 2017, prior to plaintiff filing this action. Thus, plaintiff may include his new claims alleging denial of adequate pain medication only if they are related to his administratively exhausted claim alleging denial of his request for a transfer for cervical traction made against defendant Arya in the original complaint.  See Rhodes v. Robinson, supra.  For the reasons stated herein, the undersigned finds that these claims are not sufficiently related.

In order to put this finding in context, the undersigned herein sets forth the new claims alleging denial of adequate pain medication contained in the proposed second amended complaint.  These claims are made against defendants Bodenheimer, Hopkins, Knipp, Felder, Sahota and Gil.

////

////

////

*Proposed New Claims Alleging Inadequate Pain Medication*[3]

Regarding defendant Bodenheimer, plaintiff alleges that he saw defendant Bodenheimer on October 18, 2016. (ECF No. 47-1 at 10.) Plaintiff allegedly told him that defendant Arya had (improperly) prescribed Celebrex. (Id.) Plaintiff complained of continued neck pain. (Id.)

Regarding defendant Hopkins, plaintiff alleges that on January 17, 2017, he was seen by defendant Hopkins in relation to a medical appeal concerning the denial of medical services. (Id. at 11.) Plaintiff requested opiate medication. (Id.)

Defendant Hopkins noted that prior treatment at CMF with gabapentin had proved successful in treating plaintiff's pain. (Id. at 12.) Defendant Hopkins stated that he would add Tylenol # 3 to the gabapentin. (Id.)

On January 20, 2017, plaintiff's gabapentin order expired. (Id.) Plaintiff alleges that gabapentin is non-formulary. (Id.) Plaintiff alleges that the non-formulary order for the gabapentin expired on January 29, 2017. (Id.) Plaintiff alleges that he tried to explain to the nursing staff that defendant Hopkins had prescribed Tylenol # 3 for him. (Id. at 12-13.) Plaintiff alleges that the issue regarding Tylenol # 3 was not addressed until he saw defendant Hopkins again on January 26, 2017. (Id. at 13.) Plaintiff alleges that on January 26, 2017, defendant Hopkins "doubled up" the Tylenol # 3 and agreed to submit another non-formulary request for gabapentin. (Id.)

Regarding defendant Knipp, plaintiff alleges that after nine days passed, he had had severe pain and had still not received gabapentin as promised by defendant Hopkins on January 26, 2017. (Id. at 13.) Plaintiff then resubmitted his medical appeal as a second level request for emergency review to defendant Knipp. (Id. at 13.) Plaintiff alleges that he complained of "Dr. Hopkins and Dr. Sahota perjured first level response of granting additional pain medication to the gabapentin." (Id.) Plaintiff also complained of nursing negligence and requested a personal interview. (Id.) Plaintiff alleges that defendant Knipp failed to respond to his claims of staff

---

[3] Later in these findings and recommendations, the undersigned alternatively recommends that the claims against defendants Bodenheimer, Hopkins, Knipp and Sahota alleging inadequate pain medication be denied for failing to state potentially colorable claims for relief.

misconduct or to treat the appeal as an emergency.  (Id.)

Regarding defendant Felder, plaintiff alleges that defendant Felder responded to his second level grievance on March 3, 2017.  (Id. at 14.)  In his response, defendant Felder noted that 21 days had passed without plaintiff receiving any gabapentin.  (Id.)  Defendant Felder also acknowledged a 30-day order for gabapentin, but failed to address the "core issue of the order and non-formulary expiring in just 8 days with no follow-up scheduled despite Dr. Hopkins efforts to write a 90-day order."  (Id.)  Defendant Felder reasoned that plaintiff should have a goal "to achieve a level of pain control that allows you to function in your activities of daily living."  (Id.)

Regarding defendant Sahota, plaintiff alleges that as a result of the actions of defendants Sahota and Felder, plaintiff's gabapentin prescription expired on March 10, 2017, and was not renewed until April 18, 2017, at another prison.  (Id.)

Regarding defendant Gil, plaintiff alleges that after he was transferred to California State Prison-Corcoran ("Corcoran"), he was seen by defendant Gil on April 18, 2017.  (Id. at 16.)  Plaintiff requested the renewal of his gabapentin prescription.  (Id.)  Defendant Gil renewed plaintiff's gabapentin prescription at 300 mg tid.  (Id.)  Plaintiff told defendant Gil that he had previously been prescribed gabapentin at 1200 mg. tid, and that 300 mg. tid would not effectively treat his pain.  (Id.)  Defendant Gil refused plaintiff's request for an increased dosage of gabapentin.  (Id.)

*Discussion*

The claim against defendant Arya in the original complaint regarding denial of plaintiff's request for cervical traction and the claims against the new defendants in the proposed second amended complaint for denial of pain medication are based on the same constitutional amendment and are apparently related to the same alleged serious medical need.  However, plaintiff's claims alleging denial of adequate pain medication are new claims against new defendants.  The proposed new claims largely relate to plaintiff's failure to receive gabapentin.  Moreover, the claims against defendant Gil occurred at a different prison (Corcoran) seven months after the September 27, 2016 exam by defendant Arya.

////

Plaintiff's claims alleging inadequate pain medication are not sufficiently related to plaintiff's claim alleging denial of his request for cervical traction.  <u>See</u> <u>Rhodes v. Robinson</u>, 621 F.3d at 1006 (citing Federal Rule of Civil Procedure 15(d); <u>see</u> <u>Planned Parenthood v. of Southern Arizona v. Neely</u>, 130 F.3d 400,402 (9th Cir. 1997) ("Rule 15(d) cannot be used to introduce a separate, distinct, new cause of action); <u>Singh v. Washburn</u>, 2016 WL 1039705 at *9-10 (D. Ore. 2016) (denying prisoner's request to file supplement complaint raising separate and distinct claims); <u>Contreraz v. Stockbridge</u>, 2012 WL 396503, at *1 (E.D.Cal. Feb.7, 2012) (denying prisoner's request to file a supplemental complaint on the grounds that doing so "[w]ould not serve the interests of judicial economy and convenience, and the proposed claims are simply not sufficiently related to the present claim to support allowing leave to supplement").

Accordingly, plaintiff's motion to file a second amended complaint raising his claims alleging denial of adequate pain medication should be denied on the grounds that these claims are not sufficiently related to the exhausted claim raised against defendant Arya in the original complaint.

*Conclusion*

In the opposition to plaintiff's motion to amend, defendant also, somewhat cryptically, argues that plaintiff delayed in raising the new claims alleged in the proposed second amended complaint.  (ECF No. 51 at 2.)  Defendant argues that "[i]n fact, it is clear from his own filings, that he only attempted to obtain the records <u>after</u> discovery closed."  (<u>Id.</u>)  Even assuming defendant is correct that plaintiff delayed in raising his new claims, undue delay, while relevant, will not by itself justify denial of leave to amend.  <u>See, e.g.</u>, <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990) ("The delay of nearly two years, while not alone enough to support denial, is nevertheless relevant."); <u>United States v. Webb</u>, 655 F.2d 977, 980 (9th Cir. 1981) ("Specifically, we noted that delay alone no matter how lengthy is an insufficient ground for denial of leave to amend"); <u>Howey v. United States</u>, 481 F.2d 1187, 1190 (9th Cir. 1973) (reversing trial court decision to deny leave to amend after unjustified five-year delay and noting that "we know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend").

18

Accordingly, plaintiff's alleged delay in raising the new claims regarding cervical traction in the proposed second amended complaint is not alone sufficient to justify denying plaintiff's motion to amend.

Defendant makes no other arguments in support of the opposition to plaintiff's motion to file a second amended complaint. Accordingly, the undersigned recommends that plaintiff's motion to file the second amended complaint to add new claims regarding his alleged failure to receive cervical traction be granted. See Genentech, Inc. v. Abbott Labs., 127 F.R.D. 529, 530–31 (N.D. Cal. 1989 (the non-moving party bears the burden of showing why leave to amend should not be granted); DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987) ("[t]he party opposing amendment bears the burden of showing prejudice.").

3. Non-Colorable Claims

In the alternative, for the reasons stated herein, the undersigned finds that plaintiff's claims alleging denial of adequate pain medication raised in the proposed second amended complaint against defendants Bodenheimer, Hopkins, Knipp and Sahota are not potentially colorable.

*Defendant Bodenheimer*

Regarding defendant Bodenheimer, plaintiff alleges that he saw defendant Bodenheimer on October 18, 2016. (ECF No. 47-1 at 10.) Plaintiff allegedly told him that defendant Arya had (improperly) prescribed Celebrex. (Id.) Plaintiff complained of continued neck pain. (Id.)

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

While plaintiff alleges that he told defendant Bodenheimer that the Celebrex did not work and that he was in pain, plaintiff does not allege how defendant Bodenheimer responded to these

complaints.  Because plaintiff has not described what action defendant Bodenheimer took, or failed to take, after being told that the Celebrex did not effectively treat plaintiff's pain, plaintiff has not demonstrated that defendant Bodenheimer acted with deliberate indifference. Accordingly, plaintiff has failed to state a potentially colorable Eighth Amendment claim against defendant Bodenheimer regarding pain medication.  This claim against defendant Bodenheimer should be dismissed.

*Defendant Hopkins*

As discussed above, plaintiff alleges that on January 17, 2017, he asked defendant Hopkins for opiate medication.  (ECF No. 47-1 at 11.)  Defendant Hopkins noted that prior treatment at CMF with gabapentin had proved successful in treating plaintiff's pain.  (Id. at 12.) Defendant Hopkins stated that he would add Tylenol # 3 to the gabapentin.  (Id.)

On January 20, 2017, plaintiff's gabapentin order expired.  (Id.)  Plaintiff alleges that gabapentin is non-formulary, which apparently means that it must be specially ordered.  (Id.) Plaintiff alleges that the non-formulary order for the gabapentin expired on January 29, 2017. (Id.)  Plaintiff alleges that he tried to explain to the nursing staff that defendant Hopkins had prescribed Tylenol # 3 for him.  (Id. at 12-13.)  Plaintiff alleges that the issue regarding Tylenol # 3 was not addressed until he saw defendant Hopkins again on January 26, 2017.  (Id. at 13.) Plaintiff alleges that on January 26, 2017, defendant Hopkins "doubled up" the Tylenol # 3 and agreed to submit another non-formulary request for gabapentin.   (Id.)

Plaintiff's claim against defendant Hopkins regarding his prescription of pain medication in January 2017 is not clear.  If plaintiff is claiming that defendant Hopkins denied his request for opioids, and instead prescribed gabapentin and Tylenol # 3, this claim does not rise to the level of deliberate indifference in violation of the Eighth Amendment.  See McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (a defendant "must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."); see also Parlin v. Sodhi, 2012 WL 5411710 at *4 (C.D. Cal. Aug. 8, 2012) ("At its core, plaintiff's claim is that he did not receive the type of treatment and pain medication that he

wanted when he wanted it. His preference for stronger medication—Vicodin, Tramadol, etc.,—represents precisely the type of difference in medical opinion between a lay prisoner and medical personnel that is insufficient to establish a constitutional violation."); Tran v. Haar, 2012 WL 37506 at *3–4 (C.D. Cal. Jan. 9, 2012) (plaintiff's allegations that defendants refused to prescribe "effective medicine" such as Vicodin and instead prescribed Ibuprofen and Naproxen reflected a difference of opinion between plaintiff and defendants as to the proper medication necessary to relieve plaintiff's pain and failed to state an Eighth Amendment claim).

Plaintiff also does not allege that defendant Hopkins caused, or had knowledge of, any of the alleged delays he experienced in receiving gabapentin and Tylenol # 3 after they were prescribed by defendant Hopkins.

Accordingly, in the alternative, the undersigned recommends that the claims alleging that defendant Hopkins failed to prescribe adequate pain medication be dismissed for failing to state potentially colorable claims.

*Defendant Knipp*

Plaintiff alleges that after nine days passed, and he had severe pain and had still not received gabapentin as promised by defendant Hopkins on January 26, 2017, he resubmitted his medical appeal as a second level request for emergency review to defendant Knipp. (ECF No. 47-1 at 13.) Plaintiff alleges that he complained of "Dr. Hopkins and Dr. Sahota perjured first level response of granting additional pain medication to the gabapentin." (Id.) Plaintiff also complained of nursing negligence and requested a personal interview. (Id.) Plaintiff alleges that defendant Knipp failed to respond to his claims of staff misconduct or to treat the appeal as an emergency. (Id.)

The undersigned acknowledge that, "a plaintiff may establish liability on the part of defendants involved in the administrative grievance process under the Eighth Amendment by alleging that his appeal put defendants on notice that he had a serious medical need that was not being met, and their denial, therefore, constituted deliberate indifference to his medical need." Brammer v. Yates, 2011 WL 5873393, at *5 (E.D. Cal. Nov. 22, 2011). However, plaintiff's allegations against defendant Knipp regarding his review of plaintiff's grievance do not state a

potentially colorable Eighth Amendment claim. While plaintiff alleges that defendant Knipp failed to treat his appeal alleging the denial of pain medication as an emergency, plaintiff does not allege when or how defendant Knipp responded to his grievance. Without knowing when or how defendant Knipp responded to the grievance, the undersigned cannot determine whether defendant Knipp acted with deliberate indifference. For these reasons, in the alternative, the undersigned recommends that the claims against defendant Knipp alleging denial of adequate pain medication be dismissed for failing to state potentially colorable claims.

*Defendant Sahota*

Plaintiff alleges that as a result of the actions of defendant Sahota, plaintiff's gabapentin prescription expired on March 10, 2017, and was not renewed until April 18, 2017, at another prison. (ECF No. 47-1 at 14-15.) Plaintiff does not describe Sahota's conduct which led to the alleged expiration of his gabapentin prescription.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant

holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

The claim that defendant Sahota caused the expiration of plaintiff's gabapentin prescription should be dismissed because plaintiff does not describe the actions of defendant Sahota leading to this alleged deprivation.

IV.  Conclusion

For the reasons discussed above, the undersigned recommends that defendant Arya's summary judgment motion, on the grounds that plaintiff failed to exhaust administrative remedies as to his claims regarding hepatitis C and Celebrex, be granted; the motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies regarding plaintiff's claims concerning his transfer to CMF for cervical traction should be denied.

For the reasons discussed above, the undersigned recommends that plaintiff's motion for leave to file a second amended complaint be granted with respect to the claims alleging that defendants Bodenheimer, Hopkins, and Felder denied plaintiff's request for a transfer in order to receive cervical traction, on the grounds that these claims are sufficiently related to the same claim raised against defendant Arya in the original complaint.

The undersigned recommends that plaintiff's motion to file a second amended complaint alleging that defendants Bodenheimer, Hopkins, Knipp, Felder, Sahota and Gil denied him adequate pain medication should be denied on the grounds that these claims are not sufficiently related to the administratively exhausted claim raised against defendant Arya in the original complaint, alleging denial of plaintiff's request for a transfer in order to receive cervical traction.

////

In the alternative, the undersigned recommends the claims alleging that defendants Bodenheimer, Sahota, Knipp and Hopkins denied plaintiff adequate pain medication, contained in the proposed second amended complaint, be dismissed for failing to state potentially colorable claims for relief.

If the district court adopts these findings and recommendations, the undersigned will order defendant Arya to file a response to the second amended complaint, and order service of defendants Bodenheimer, Hopkins and Felder.

Because the undersigned recommends that this action proceed as to newly named defendants Bodenheimer, Hopkins and Felder regarding plaintiff's claim alleging denial of cervical traction, the undersigned recommends that defendant Arya's motion for summary judgment on the merits of this claim be denied without prejudice to renewal at a later stage of these proceedings. The undersigned also need not address defendant Arya's motion for summary judgment as to the merits of plaintiff's claim that defendant wrongly prescribed Celebrex and failed to provide hepatitis C treatment because these claims are not administratively exhausted.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Arya's summary judgment motion (ECF No. 46) on the grounds that plaintiff failed to exhaust administrative remedies as to his claims regarding hepatitis C and Celebrex be granted; defendant Arya's summary judgment motion on the grounds that plaintiff failed to exhaust administrative remedies as to his claim regarding cervical traction be denied; defendant's summary judgment motion as to the merits of plaintiff's claim regarding cervical transfer be denied without prejudice to renewal at a later stage of these proceedings;

2. Plaintiff's motion to file a second amended complaint (ECF No. 47) be granted in part and denied in part;

3. Plaintiff's motion to file a second amended complaint raising new claims regarding treatment for hepatitis C and denial of adequate pain medication be denied;

4. Plaintiff's motion to file a second amended complaint be granted as to his claims alleging that defendants Arya, Bodenheimer, Hopkins and Felder denied his request to be transferred in order to receive cervical traction;

24

5.  In the alternative, plaintiff's claims that defendants Bodenheimer, Sahota, Knipp and Hopkins denied plaintiff adequate pain medication, contained in the proposed second amended complaint, be dismissed for failing to state potentially colorable claims for relief.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 16, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Hick2465.sj
Kc

25